IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BOBBY MADDEN,                       :
                    Petitioner      :
                                    :   CIVIL NO. 1:13-CV-2775
        v.                          :
                                    :   (Judge Caldwell)
COMMONWEALTH OF                     :
PENNSYLVANIA, et al.                :
                    Respondents     :

*M E M O R A N D U M*

I.   *Introduction and Procedural History*

        Bobby Madden, an inmate at the State Correctional Institution in Coal

Township, Pennsylvania, has filed a pro se petition for a writ of habeas corpus under 28

U.S.C. § 2254.  In 2009, a jury in the Court of Common Pleas of Dauphin County,

Pennsylvania, convicted Petitioner of the following four offenses: burglary, robbery,

alteration (or obliteration) of a manufacturer's number on a firearm, and possession of a

firearm with an altered manufacturer's number.  He was sentenced to an aggregate term

of seven and one-half to fifteen years of incarceration.

        Petitioner presents the following grounds for relief, all challenging his

conviction for alteration of a firearm's manufacturer's number.  In his first ground,

Petitioner claims trial counsel was ineffective in not challenging at trial or on direct appeal

the conviction for altering a manufacturer's number on a firearm because 18 Pa. Con.

Stat. Ann. § 6117(b), the statute of conviction, was repealed in 2008 before his 2009 trial.

In support, he asserts there was insufficient evidence to establish beyond a reasonable doubt that Petitioner ever owned or possessed the altered firearm.

In his second ground, Petitioner claims his PCRA counsel was ineffective in not filing an appeal from the Pennsylvania Superior Court's decision affirming the trial court's denial of Petitioner's first PCRA petition in regard to the section 6117(b) conviction.  Petitioner asserts there was no evidence introduced at trial that he had scratched the serial numbers off the firearm, and thus there was a violation of his due process right to be convicted only on evidence showing guilt beyond a reasonable doubt. Petitioner also asserts PCRA counsel should have known that section 6117(b) had been repealed.

In his third ground for relief, Petitioner claims the state-court rulings sustaining his section 6117(b) conviction are unconstitutional because the section had been repealed so Petitioner was convicted of a crime that did not exist.  Further, without the section 6117(b) offense, there would have been no offense under 18 Pa. Con. Stat. Ann. § 6110.2(a), possession of an altered firearm, just possession of a firearm.

In his fourth ground for relief, Petitioner claims the section 6117(b) conviction is unconstitutional, reiterating that the statutory provision was repealed and that there was no proof at trial concerning who removed the manufacturer's number from the firearm.  He also asserts that the section 6110.2(a) offense was never proven.

Our initial review of the petition indicated that it might be barred by the one-year statute of limitations for filing 2254 petitions.  We gave Respondents an opportunity

to brief the limitations issue before requiring an answer on the merits.  Respondents did so, and Petitioner filed a reply brief.  After review of the parties' positions and the grounds for relief presented in the petition, it appeared that Petitioner had an additional argument on the timeliness of his petition in regard to his conviction for altering a manufacturer's number on a firearm.  Specifically, we thought he might be able to benefit from *McQuiggin v. Perkins*, ____ U.S. ____, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), where the Supreme Court held that a convincing claim of actual innocence overcomes the bar of the statute of limitations.  We gave Petitioner an opportunity to address whether the petition was timely in light of *McQuiggin* and Respondents an opportunity to file an opposition brief.  The parties have submitted their filings, and we now address the timeliness of the petition.

II.   *Discussion*

    A.  *Relevant Law*

    There is a one-year statute of limitations for filing section 2254 petitions. *See* 28 U.S.C. § 2244(d)(1).  In pertinent part, the statute begins to run from the latest of two events.  First, the statute can run from the date the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review.  *See Wall v. Kholi*, 562 U.S. 545, ____, 131 S.Ct. 1278, 1283, 179 L.Ed.2d 252 (2011)(citing 28 U.S.C. § 2244(d)(1)(A)); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 410, 125 S.Ct. 1807, 1810, 161 L.Ed.2d 669 (2005).  This language applies to the right

on direct review to seek discretionary review in state appellate courts, and means that the

judgment does not become final until the time period for seeking such review expires,

even if review is not sought.  *See Swartz v. Meyers*, 204 F.3d 417, 421 (3d Cir. 2000).  It

also applies to the right on direct review to seek certiorari review in the United States

Supreme Court so that if review is sought in the state's highest court, the judgment does

not become final until the ninety-day period for seeking certiorari review expires.  *See*

*Jenkins v. Superintendent of Laurel Highlands,* 705 F.3d 80, 84 (3d Cir. 2013)(citing

*Gonzalez v. Thaler*, _____ U.S. _____, _____, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619

(2012)).[1]

Second, the statute begins to run from "the date on which the impediment

to filing an application created by State action in violation of the Constitution or laws of

the United States is removed, if the applicant was prevented from filing by such State

action . . . ."  28 U.S.C. § 2244(d)(1)(B).     The limitations period is subject to statutory

tolling.  *Jenkins, supra,* 705 F.3d at 85.  Statutory tolling occurs during the time "a

properly filed application for State post conviction or other collateral review with respect

to the pertinent judgment or claim is pending . . . ."  28 U.S.C. § 2244(d)(2); *Swartz,*

*supra,* 204 F.3d at 419.

Statutory tolling applies to those periods when an application for

discretionary review is pending in a state appellate court from the denial of postconviction

---

[1]   If a petitioner does seek certiorari review, "the judgment becomes final . . . when
the [Supreme Court] affirms a conviction on the merits or denies a petition for certiorari."
*Gonzalez,* _____ U.S. at _____, 132 S.Ct. at 653.

relief, *see Kindler v. Horn*, 542 F.3d 70, 77 n.5 (3d Cir. 2008)(noting that the petitioner's PCRA petition was pending at least through the date the Pennsylvania Supreme Court denied his petition for review), *rev'd on other grounds*, *Beard v. Kindler,* 558 U.S. 53, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  It also applies to the time period for seeking state-court appellate review from the denial of postconviction relief even if such review is not sought.  *Jenkins*, *supra*, 705 F.3d at 85 n.4.  However, it does not apply to the time the petitioner has for seeking certiorari review from the United States Supreme Court, *id.* n.5, or the time period during which such an application has actually been filed and is pending.  *Lawrence v. Florida*, 549 U.S. 327, 329, 127 S.Ct. 1079, 1081, 166 L.Ed.2d 924 (2007)(a state application for postconviction relief is not pending under section 2244(d)(2) "when the state courts have entered a final judgment in the matter but a petition for certiorari has been filed" in the Supreme Court).

The limitations period is also subject to equitable tolling, *Jenkins, supra,* 705 F.3d at 88-89, and to an equitable exception established in *McQuiggin v. Perkins*, ____ U.S. ____, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).  In *McQuiggin*, the Supreme Court held that a convincing claim of actual innocence overcomes the bar of the statute of limitations.  *Id.* at ____, 133 S.Ct. at 1928.

B. *The Petition Is Untimely*

Under the following analysis, the court concludes the petition is untimely. On April 10, 2009, Petitioner was sentenced.  *Commonwealth v. Madden*, No. CP-22-CR-

3859-2008 (Pa. Ct. Com. Pl. Dauphin Cnty.).[2]  On May 5, 2009, the trial court denied

Petitioner's post-sentence motion, and on May 27, 2009, Petitioner took a timely appeal

to the Pennsylvania Superior Court.  *Commonwealth v. Madden*, No. 918 MDA 2009 (Pa.

Super. Ct.).  On November 23, 2010, the superior court affirmed the judgment of

sentence.  *Id.*  Petitioner had thirty days from the date of the superior court's decision to

file a petition for allowance of appeal with the Pennsylvania Supreme Court but did not do

so.

This means Petitioner's conviction became final on December 23, 2010, the

expiration of the thirty-day period for seeking review in the state supreme court, and that

the statute of limitations began running on that date.  On April 11, 2011, Petitioner filed a

postconviction petition in the trial court under the Pennsylvania Post Conviction Relief Act

(PCRA), 42 Pa. Con. Stat. Ann. §§ 9541-9546, so the limitations period ran for 109 days

before the filing of the PCRA petition statutorily tolled the period with 256 days left.

On January 24, 2012, the trial court denied the PCRA petition, and

Petitioner filed a timely appeal with the superior court.  On August 28, 2012, the superior

court denied the appeal.  *Commonwealth v. Madden*, No. 451 MDA 2012 (Pa. Super.

Ct.).  Petitioner had thirty days from the date of the superior court's decision to file a

petition for allowance of appeal with the Pennsylvania Supreme Court but did not do so.

---

[2]  We take these dates from the trial and appellate court docket sheets, available via
the Pennsylvania Judiciary's Web Application Portal, http://ujsportal.pacourts.us/default.aspx.

The limitations period thus began running again on September 27, 2012, the expiration of the thirty-day period for seeking review in the state supreme court. It ran for thirty-six days until November 2, 2012, when Petitioner filed a second PCRA petition in the trial court, as the trial court granted relief on the second petition by an order of December 21, 2012. At that time, Petitioner had 220 days left in the limitations period.

The December 21 order reinstated his right to petition the state supreme court for allowance of appeal from the superior court's decision on the first PCRA petition. (Doc. 23, December 21 order). However, Petitioner never filed a petition with the state supreme court so the limitations period began running again on January 22, 2013, the expiration of the period for filing the petition.[3]

With 220 days left in the limitations period, Petitioner had until August 30, 2013, to file his 2254 petition. Under the prison mailbox rule, Petitioner did not file his federal habeas petition until November 7, 2013,[4] thereby making it untimely by about two months and a one week.

---

[3] The thirty-day period expired on January 20, 2013, but that was a Sunday and the next day, January 21, was Martin Luther King Day, a holiday in Pennsylvania. Weekends and state holidays are not counted in calculating the filing deadline. *See* Pa. R.Crim. P. 101(C); 1 Pa.C.S. § 1908 (computation of the last day of a time period excludes Saturday, Sunday, and federal and state holidays); *see also Commonwealth v. Baker,* 547 Pa. 214, 221, 690 A.2d 164, 167 (1997) ("the Rules of Criminal Procedure are to be construed in accordance with the rules of statutory construction"); *Commonwealth v. Green,* 862 A.2d 613, 617-18 (Pa. Super. 2004) (en banc). We also observe here that while the December 21 order did not impose a deadline, when the order is silent in that regard, Pennsylvania law imposes a thirty-day deadline. *See Commonwealth v. Wright*, 846 A.2d 730, 734 and n.3 (Pa. Super. Ct. 2004).

[4] It was docketed on November 13, 2007.

Petitioner argues that the petition was timely because the Commonwealth had created an impediment to filing the 2254 petition in a timely manner.  Section 2244(d)(1)(B) runs the statute from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action . . . ."  28 U.S.C. § 2244(d)(1)(B).  Petitioner asserts the impediment was created when his PCRA counsel failed to file an appeal to the state supreme court after Petitioner had been given permission to do so by the December 21, 2012, order of the trial court.  Petitioner relies on letters sent to his PCRA counsel on April 8, 2013, and April 16, 2013, from the state supreme court.  (Doc. 17-1. ECF pp. 1-2).  In the first letter, the supreme court forwarded a letter to PCRA counsel it had received from Petitioner.  In the letter, the supreme court advised PCRA counsel that he was still counsel for Petitioner and that the trial court had reinstated Petitioner's right to file a petition for allowance of appeal in regard to the first PCRA petition.  In the second letter, the supreme court forwarded another letter it had received from Petitioner and asked PCRA counsel to advise his client that he could not communicate directly with the court while he was represented.  Petitioner also relies on a notice of appeal he attempted to file pro se in January 2013 with the trial court but which was returned to him the same month because he had counsel.  (Doc. 17-1. ECF pp. 3-4).

Petitioner has not established a state-created impediment to the filing of his federal habeas petition.  At most, he has established that he was impeded from filing a

-8-

state-court appeal; nothing prevented him from filing his habeas petition in federal court. Petitioner was copied on the letters so he knew in April 2013 that no notice of appeal had been filed on his behalf.  We therefore reject his impediment argument.

Petitioner also argues he should be able to proceed on his challenge to his section 6117(b) conviction under the equitable exception to the statute of limitations established in *McQuiggin v. Perkins*, _____ U.S. _____, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013).  As noted, in *McQuiggin*, the Supreme Court held that a convincing claim of actual innocence overcomes the bar of the statute of limitations.  *Id.* at _____, 133 S.Ct. at 1928.

At the outset, we note that while Petitioner identifies his conviction for altering or obliterating the manufacturer's number on a firearm as one under section 6117(b), the offense is actually one under section 6117(a).  In pertinent part, section 6117(a) provides as follows: "(a) Offense defined.--No person shall change, alter, remove, or obliterate the manufacturer's number integral to the frame or receiver of any firearm . . . . "  18 Pa. Con. Stat. Ann. § 6117(a).  Section 6117(b) is no longer in effect.  It was repealed by the Act of Oct. 17, 2008, P.L. 1628, No. 131, § 7, effective in sixty days, December 16, 2008.  Section 6117(b) read as follows:

> (b) Presumption.--Possession of any firearm upon which any such mark shall have been changed, altered, removed or obliterated shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same.

18 Pa. Con. Stat. Ann. § 6117(b)(repealed).

When section 6117(b) was in effect, the Pennsylvania Supreme Court held that the presumption creates a permissible inference, but that there is insufficient evidence to sustain a conviction for obliteration of a firearm's manufacturer's number if the only proof offered at trial is that the defendant possessed a firearm with an obliterated number. *Commonwealth v. Mason*, 483 Pa. 409, 413-14, 397 A.2d 408, 411 (1979). Respondents admit that the Commonwealth relied on the presumption to establish Petitioner's guilt on the obliteration offense. (Doc. 31, ECF pp. 8-9).

Before addressing Petitioner's argument, we set forth the factual background to his convictions as recounted by the trial court for Petitioner's direct appeal:

> At trial, the Commonwealth's witnesses testified that on July 14, 2008, the victim, Larry Mebane and his guest, Janelle Stevenson, returned to his apartment at 2038 Berryhill Street at or around midnight[.] *Notes of Trial March 10-11, 2009, at 48-49.* While Mebane searched the kitchen for a late night supper, Stevenson walked to the back of Mebane's apartment and lifted a curtain to enter Mebane's bedroom. *Id. at 100-02.* Stevenson was immediately confronted by an armed stranger who was several feet away and pointing a gun at her. *Id.* During her testimony, Stevenson said she was positive that the Defendant was the person she saw in Mebane's bedroom that night. *Id. at 117.* Stevenson quickly fled the apartment, warning Mebane of the armed intruder as she ran out. *Id. at 103.*
>
> Mebane also fled his apartment when he saw the intruder entering the kitchen. As he jumped down the exterior stairs, he heard gunshots behind him. *Id. at 50-55*; *also see id. at 105-06.* Mebane testified that he saw the intruder wearing all black clothing, with a black do-rag or stocking cap, and carrying a black gun. *Id. at 52-53.* From a safe vantage point to which Mebane had fled, he saw the burglar walking toward a nearby neighborhood Laundromat with a black garbage bag over his shoulder. *Id. at 58.* Although the burglar eventually

walked out of Mebane's line of vision, Stevenson, who had sought shelter in the same Laundromat, confirmed that shortly after she hid in the Laundromat, a man matching the burglar's physical description walked by the store carrying a hefty black garbage bag. *Id. at 107-09*.

The police arrived shortly thereafter because a neighbor had called the police when the burglar fired a shot at the escaping tenants. *Id. at 129*. The first to arrive at the area of Mebane's apartment, Officer Butler of the Harrisburg Police Department, spoke with Mebane and issued a radio bulletin for patrols in the area to be on the lookout for a person matching the description Mebane had provided. *Id. at 120-122*. Mebane also gave the police officer a description of the property he noted to be missing from his apartment. *Id. at 162*. Within a matter of minutes, other police units had detained the Defendant as he was walking west on Kensington Street a few blocks to the northwest of Mebane's apartment. At the time of his detention, the Defendant was wearing attire matching the burglar's description although he was not carrying a black garbage bag when stopped. *Id. at 131-32*. . . .

Incident to the arrest, the police searched the Defendant and discovered a clump of papers in the Defendant's pocket among which was [a] credit card issued to Mebane. *Id. at 154-55*. After the Defendant had been transported to the police station, the police returned to Mebane's apartment and to that area of Kensington Street where the Defendant had been detained to search for any additional evidence. The police discovered one spent shell casing at Mebane's apartment, and near 1925 Kensington Street the police recovered a pistol and a black garbage bag which contained Mebane's lost property. *Id. 136-140; 158; 162*. . . . A forensic expert for the Commonwealth testified to a reasonable degree of professional certainty that the empty shell casing found at Mebane's apartment was traceable and likely came from the abandoned pistol located on Kensington Street. *Id. at 208-09*. This expert also said the gun's serial number had been scratched off but by using laboratory procedures he was able to retrieve the pistol's identification number. *Id. at 207-08*.

(Doc. 23, ECF pp. 5-6).

In his supplemental brief (Doc. 29), Petitioner asserts he is actually innocent of the obliteration offense and hence his petition is timely as to that offense because: (1) no evidence was offered at trial that Petitioner or anyone obliterated the numbers on the firearm; (2) he was found not guilty of the charge of possession of a firearm without a license; (3) he was convicted under a repealed statute, section 6117(b); and (4) the obliteration offense was proven solely by possession of a firearm with an obliterated manufacturer's number.

On an actual innocence claim, "a petitioner must demonstrate two things . . . . First, a petitioner must present new, reliable evidence that was not presented at trial. *Schlup* [v. Delo], 513 U.S. [298,] 324, 115 S.Ct. [851,] 865, [130 L.Ed.2d 808 (1995]. Second, a petitioner must show by a preponderance of the evidence, "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' *Id.* at 327, 115 S.Ct. at 867." *Houck v. Stickman,* 625 F.3d 88, 93 (3d Cir. 2010). The court examines not just the new evidence but the old evidence as well. *House v. Bell,* 547 U.S. 518, 538, 126 S.Ct. 2064, 2077, 165 L.Ed.2d 1 (2006). "[A]ctual innocence requires a showing of factual innocence, not mere legal insufficiency." *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002).

Petitioner has failed to show his actual innocence of the obliteration offense because he has not produced new evidence. He does assert that no evidence was offered at trial that he or anyone else obliterated the numbers on the firearm and that the

Commonwealth relied solely on the permissible inference created by section 6117(b) to prove the obliteration offense.  However, these arguments go only to the sufficiency of the evidence on the offense, not to Petitioner's factual innocence.  *See Peace v. Klopotoski*, No. 08-CV-3927, 2009 WL 1872097, at *3 and 6-8 (E.D. Pa. June 30, 2009)(actual innocence of section 6117(a) obliteration offense was not established by showing that evidence at trial was not sufficient to establish guilt and that the Commonwealth relied on the section 6117(b) permissible inference).  Even if we considered Petitioner's assertion of actual innocence as an affirmation of his innocence, it would not qualify as new evidence.  *See Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)(the petitioner's testimony exculpating himself from the crime is not new evidence when he could have testified at trial).

Petitioner is not assisted by his two other arguments.  That he was not found guilty of possession of a firearm without a license is irrelevant to his obliteration offense.  The argument is also factually incorrect as the charge of possession of a firearm without a license was withdrawn before trial.  *Commonwealth v. Madden*, No. CP-22-CR-3859-2008, docket sheet at p. 3 (Pa. Ct. Com. Pl. Dauphin Cnty.).

Petitioner also cannot complain about being convicted under a repealed statute, section 6117(b).  Section 6117(b) only set forth a permissible inference; it was not the substantive offense.  To dispose of this argument we need not agree with Respondents that the inference still applied because Petitioner committed his offense

before section 6117(b) was repealed, effective December 16, 2008.[5]  This argument fails

because it also goes only to the sufficiency of the evidence, and we deal here with

whether Petitioner has established his actual innocence to excuse his failure to file a

timely 2254 petition.  "[T]enable actual innocence gateway pleas are rare . . . ."

*McQuiggin*, *supra*, ____, U.S. at ____, 133 S.Ct. at 1928.  And "even the existence of a

concededly meritorious constitutional violation is not in itself sufficient to establish a

miscarriage of justice that would allow a habeas court to reach the merits of a barred

claim."  *Goldblum v. Klem*, 510 F.3d 204, 225 (3d Cir. 2007)(quoting *Schlup*, 513 U.S. at

316, 115 S.Ct. at 861).

III.   *Conclusion*

We will issue an order denying the section 2254 petition.  The order will

also deny a certificate of appealability, based on the analysis in this memorandum.

However, Petitioner is advised that he has the right for thirty (30) days to appeal our

order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and

that our denial of a certificate of appealability does not prevent him from doing so, as long

as he also seeks a certificate of appealability from the court of appeals.  *See*

---

[5]  Petitioner committed the offense on July 14, 2008.  (Doc. 23, ECF p. 79, *Commonwealth v. Madden*, No. 451 MDA 2012, slip op. at 1 (Pa. Super. Ct. Aug. 28, 2012)).  The trial was held in March 2009.  *Commonwealth v. Madden*, No. CP-22-CR-3859-2008, docket sheet at p. 6 (Pa. Ct. Com. Pl. Dauphin Cnty.).



Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.


/s/ William W. Caldwell
William W. Caldwell
United States District Judge


Date: December 17, 2014